IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

DARRYL ANTHONY CASH,

    Plaintiff,

        v.

UNITED STATES OF AMERICA, *et al.*,

    Defendants.

CIVIL NO.: WDQ-12-0563

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Darryl Anthony Cash sued the United States, the U.S.
Marshals Service, U.S. Marshal Mike Ulrich, West Virginia State
Police Sergeant and Special Deputy U.S. Marshal Thomas C. Kearns
(collectively the "federal defendants"), Washington County,
Maryland, and the West Virginia State Police for civil rights
violations and Maryland state law claims.  Pending are the
Washington County and the State Police motion to dismiss and the
federal defendants' motion to dismiss or, in the alternative,
for summary judgment.  For the following reasons, the Washington
County and the State Police motions to dismiss will be granted.
The federal defendants' motion to dismiss or for summary
judgment will be granted.

I.   Background[1]

On April 24, 2009, officers from the U.S. Marshals Service, the Hagerstown, Maryland, Police Department, and the West Virginia State Police converged on 239 Merrbaugh Drive in Hagerstown searching for Cash.  ECF No. 1 ¶ 10.  Ulrich and Kearns[2] entered the attic of the house where they found Cash. *Id*. ¶ 12.  The parties disagree about the events in the attic.

Cash alleges[3] that he was on his stomach and attempted to surrender by showing his raised, opened hands.  *Id*. ¶ 13.  While Cash was rising to his feet, as instructed by the officers,[4] Ulrich pointed his Taser light at Cash.  *Id*. ¶ 13-14.  Ulrich then fell from the attic, discharging his Taser either immediately before or when he fell.  *Id*. ¶ 15-16.  The probes from the Taser hit Kearns.  *Id*. ¶ 16.  Upon being hit, Kearns shot Cash approximately five times with his pistol.  *Id*. ¶ 17.

---

[1] For the motions to dismiss, the well-pled allegations in the complaint are accepted as true.  *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011).  In reviewing the motion for summary judgment, the nonmovant's evidence "is to be believed, and all justifiable inferences are to be drawn in [his] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[2] Kearns had been deputized by the U.S. Marshal for the Northern District of West Virginia.  ECF No. 22-8.

[3] Cash has not submitted affidavits or any other evidence to rebut the federal defendants' summary judgment motion and relies entirely on the complaint.  *See* ECF No. 25 at 6-7.

[4] Cash has not alleged which officer gave him the commands.

2

Cash suffered numerous injuries to his excretory systems.  *Id.* ¶ 23.

The Hagerstown Police Department and the U.S. Marshals Service completed investigations of the incident.  *Id.* ¶ 22; *see* ECF Nos. 22-11 to -13.  Ulrich and Kearns prepared statements as part of the investigation.[5]  Ulrich and Kearns stated that Cash was suspected in several crimes and was known to carry a handgun.  *See* ECF Nos. 22-5 at 2, 22-10 at 1.

Ulrich stated that when he entered the attic, Cash has lying prone with his hands obscured in insulation.  ECF No. 22-5 at 1.  After Ulrich twice commanded Cash to show his hands, Cash complied but quickly buried his hands.  *Id.*  Ulrich again ordered Cash to show his hands, which he did.  *Id.*

At this point, Kearns entered the attic and began giving commands.  *Id.*  Kearns ordered Cash to keep his hands visible. *Id.*  Cash complied momentarily but again hid his hands.  *Id.* at 2.  When Kearns again commanded Cash to show his hands, Cash "half compl[ied] and then mov[ed] his hands toward the waist area of his body."  *Id.*

Kearns ordered Cash to turn around and place his hands on his head; Cash initially did not obey, but eventually began to comply.  *Id.*.  Cash then posed in a springing fashion, and "got

---

[5] Ulrich and Kearns attached true and correct copies of their statements to their declarations.  *See* ECF Nos. 22-2 ¶ 5, 22-6 ¶ 7.

a look of resolve and a slight sneer on his fact." *Id.* Ulrich felt an "overwhelming sense" that Cash was about "to commit himself to deadly force and attack" him and Kearns. *Id.* Cash then leapt toward Kearns, and Ulrich discharged his Taser. *Id.* While attempting to get a better view of Cash and his hands, Ulrich fell from the attic. *Id.*

Kearns stated that when he first entered the attic, Cash was lying on his stomach with his hands hidden. ECF No. 22-10 at 2. Ulrich ordered Cash to come out and keep his hands in view; Cash crawled forward but buried his hands. *Id.* After Kearns again ordered Cash to show his hands, Cash raised them to his sides. *Id.* Kearns began to move toward Cash to handcuff him. *Id.*

As Kearns approached, Cash moved his hands "in a motion consistent with that of reaching behind his lower back as if to recover a weapon." *Id.* Kearns ordered Cash to stop, turn around, and place his hands on his neck. *Id.* Cash appeared to reach for a weapon. ECF No. 22-10 at 2. As Cash continued to ignore Kearns's directives to stop moving, Cash began to move forward while crouching and then glanced to his right. *Id.* Cash then lunged for the side of the attic and stuck his hand in the insulation. *Id.* Cash removed his hand and pointed it at Ulrich and Kearns. *Id.* Kearns at that moment believed Cash had a gun and that they were in "immediate and eminent (*sic*) danger

4

of receiving a violent injury or death." *Id.* Kearns heard a gunshot, saw a flash, felt extreme pain, and saw Ulrich fall out of the attic. *Id.* Kearns, believing that Cash had shot him and Ulrich, returned fire. *Id.*

Cash filed an administrative claim with the Department of Justice.[6] ECF No. 1 ¶ 1.  On August 22, 2011, the claim was denied.  On February 22, 2012, Cash sued the United States; the U.S. Marshals Service; Washington County, Maryland; the West Virginia State Police; Deputy U.S. Marshal Mike Ulrich in his individual and official capacities; and Thomas Kearns in his individual capacity and his official capacities as a West Virginia State Police officer and as a Deputy U.S. Marshal, in an eight-count complaint.[7] *Id.* at 1.

On April 2, 2012, Washington County moved to dismiss, asserting that Cash alleged no facts indicating its involvement in the wrongful acts.  ECF No. 6.  Cash opposed the motion, ECF No. 13, but Washington County did not reply.  On April 6, 2012,

----

[6] Cash has not alleged when he filed the claim.

[7] Cash alleges (1) negligence (all defendants), (2) violation of the Fourth Amendment (all defendants), (3) violation of the Fifth Amendment (all defendants), (4) battery (all defendants), (5) violation of the Maryland Declaration of Rights (all defendants), (6) negligent hiring and retention (United States, Marshals Service, Washington County, State Police), (7) negligent entrustment (United States, Marshals Service, Washington County, State Police), and (8) negligent supervision and training (United States, Marshals Service, Washington County, State Police).

the West Virginia State Police moved to dismiss under the Eleventh Amendment to the U.S. Constitution.  Cash opposed, ECF No. 16, and the State Police replied, ECF No. 17.

On June 28, 2012, the U.S. Attorney for the District of Maryland certified that Ulrich and Kearns were acting within the scope of their federal employment at all relevant times.  ECF No. 22-14.  On July 2, 2012, the federal defendants moved to dismiss all claims on various grounds, or, alternatively, for summary judgment on claims I-IV.  ECF No. 22.  The federal defendants supported the motion with Ulrich's and Kearns's declarations, ECF Nos. 22-2 to -10, investigation documents, 22-11 to -13, and the U.S. Attorney's certification 22-14.  Cash opposed the motion, ECF No. 25, and the federal defendants replied, ECF No. 26.

II.  Analysis

A.   Legal Standards

1.   Failure to State a Claim

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679 (internal quotation marks omitted). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks and alteration omitted).

2.   Subject Matter Jurisdiction

Under Fed. R. Civ. P. 12(b)(1), the Court must dismiss an action if it discovers it lacks subject matter jurisdiction. The plaintiff has the burden of proving the Court has jurisdiction, and the Court must make all reasonable inferences in the plaintiff's favor. *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004). The Court may "look beyond the pleadings" to decide whether it has subject matter jurisdiction, but it must presume that the factual allegations in the complaint are true. *Id.*

3.   Eleventh Amendment Immunity

"Eleventh Amendment immunity has attributes of both subject-matter jurisdiction and personal jurisdiction." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 480 (4th Cir. 2005). "It is like subject matter jurisdiction in that it may be raised at any time, but resembles personal jurisdiction in that it may be waived by the state." *Hutto v. S.C. Ret. Sys.*, No. 4:10-cv-02018-JMC, 2012 WL 4482936, at *4 (D. Sc. Sept. 27, 2012). Although the Fourth Circuit has not decided the issue, other courts of appeals place the burden of proving Eleventh Amendment Immunity on the government entity claiming it. *See, e.g., Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 237 (2d Cir. 2006).

8

### 4.   Summary Judgment

Under Rule 56(a), summary judgment "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[8]  In considering the motion, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in [his] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted).

---

[8] Rule 56(a), which "carries forward the summary-judgment standard expressed in former subdivision (c)," changed "genuine 'issue' [to] genuine 'dispute,'" and restored the word "'shall' . . . to express the direction to grant summary judgment." Fed. R. Civ. P. 56 advisory committee's note.

B.    Washington County's Motion to Dismiss

Washington County asserts that Cash fails to state a claim against it because he alleges actions by the police department of Hagerstown, a separate entity governed by its own charter. ECF No. 6 at 3-4.[9]  Cash argues, without citation, that the county contains Hagerstown and that the police department is "its arm and funding recipient."  ECF No. 13 at 1-2.

The sole reference to Washington County as an entity in the complaint is that it is "a county in Maryland containing the city of Hagerstown, an incorporated municipality."  ECF No. 1 ¶ 6.  There are several references, however, to the Hagerstown Police Department.  *See, e.g.*, *id.* ¶¶ 10-11, 19, 22.

Washington County is a Commissioner County under Maryland law.  *Mills v. Godlove*, 26 A.3d 1034, 1041 (Md. Ct. Spec. App. 2011).  As such, Washington County does not have a charter and is instead governed by Article 25 of the Maryland Code.  *See Dotson v. Chester*, 937 F.2d 920, 928 (4th Cir. 1991).  Thus, the General Assembly legalizes the local laws for the County.  *See* 2007 Md. Laws 253.

Hagerstown is an incorporated city within Washington County.  Article XI-E of the Maryland Constitution permits the General Assembly to grant charters to municipal corporations.

---

[9] Because the claims against the County will be dismissed, the Court need not reach the County's alternative assertion that it is immune from suit.  *See* ECF No. 6 at 4.

*See* Md. Const. art XI-3 § 1.   Under this power, the General Assembly granted a charter to the City of Hagerstown effective, April 6, 1983.   *See* Charter of the City of Hagerstown [hereinafter "Charter"].   The Charter grants to Hagerstown the power "[t]o establish, operate and maintain a police force." Charter § 401(b)(44); *see* Md. Code Ann. art. 23A § 2.

The complaint directly references the Hagerstown Police Department, an entity that the incorporated City of Hagerstown is authorized to create.   *See* Charter § 401(b)(44).   Municipal police departments are agencies of the municipality.   *See Clea v. Mayor & City Council of Balt.*, 541 A.2d 1303, 1306 (Md. 1988).   Given their separate legal statuses, nothing in the complaint connects the Hagerstown Police Department to Washington County other than the statement that Hagerstown lies within the County.   As Cash has not alleged any connection between the allegations and Washington County, the motion will be granted.[10]

C.   West Virginia State Police's Motion to Dismiss

The West Virginia State Police asserts that claims against it are barred by the Eleventh Amendment.   ECF No. 9 at 2.   Cash argues that the State Police has not met its burden of showing

---

[10] *See French v. Allegany County*, Civ. No. CCB-11-2600, 2012 WL 5324901, at *3 (D. Md. Sept. 18, 2012) (suit against County for actions of state court should have been brought against the state).

11

that it is an arm of the state for Eleventh Amendment immunity under *Ram Ditta v. Maryland National Capital Park & Planning Commission*.[11]  ECF No. 16 at 3-4.  The State Police responds that West Virginia law makes clear that it is an arm of the state, and the Fourth Circuit has recognized its immunity.  ECF No. 17 at 2.

The Eleventh Amendment generally prohibits private suits in federal court against states and their agencies unless the state has consented to the suit or Congress has abrogated the States' immunity.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984).  Cash has not alleged consent or abrogation.

The Fourth Circuit has recognized that the State Police is an agency of West Virginia entitled to Eleventh Amendment immunity, albeit without analyzing the *Ram Ditta* factors. *Giancola v. W. Va. Dep't of Pub. Safety*,[12] 830 F.2d 547, 552 (4th Cir. 1987).  West Virginia law confirms this conclusion.  The legislature appropriates money for the State Police, *see, e.g.*, W. Va. Code § 15-2-12(m), and can repurpose money in special

---

[11] 822 F.2d 456 (4th Cir. 1987).  There, the Fourth Circuit used four nonexclusive factors to decide if an agency is an alter ego of the state for Eleventh Amendment immunity: (1) whether the state treasury will be responsible for paying a judgment, (2) whether the entity exercises a significant degree of autonomy from the state, (3) whether it is involved with local versus statewide concerns, and (4) how it is treated as a matter of state law.  *Id.* at 457-58.

[12] The State Police was formerly known as the Department of Public Safety.  W. Va. Code § 15-2-2.

funds controlled by the State Police. *Id.* § 15-2-12(j)-(k).
The superintendent is nominated by the governor with the advice
and consent of the West Virginia Senate. *Id.* § 15-2-2. State
statutes dictate dress, weapons, benefits, and a bond by the
superintendent. *See id.; id.* § 15-2-10, -26 to -52. State
Police have statewide jurisdiction. *See, e.g., id.* § 15-2-11.
Finally, the courts of West Virginia regard the State Police as
an arm of the state. *See, e.g., Pruitt v. W. Va. Dep't of
Public Safety*, 664 S.E.2d 175, 180-81 (W. Va. 2008).[13]

All the *Ram Ditta* considerations favor finding the State
Police an arm of the state entitled to Eleventh Amendment
immunity. *Accord Giancola*, 830 F.2d at 552. The State Police's
motion to dismiss will be granted.

> D.   Federal Defendants' Motion to Dismiss or for Summary
>      Judgment

The federal defendants seek dismissal of every count in the
complaint on various grounds or, alternatively, summary judgment
on counts I-IV. ECF No. 22. Cash opposes the motion. ECF No.
25.

---

[13] Relying on *Pruitt*, Cash argues that the State Police is not
immune from suit. ECF No. 16 at 6-7. Cash's argument is
misplaced, as *Pruitt* was brought in West Virginia state courts.
Waiver of sovereign immunity in state court is not the same as
waiver under the Eleventh Amendment. *See Green v. Div. of
Corr.*, Civ. No. GLR-11-3687, 2012 WL 4757923, at *2 (D. Md. Oct.
4, 2012).

1.   Legal Standards:  The Federal Tort Claims Act

The Federal Tort Claims Act ("FTCA") is a "limited waiver of the United States' sovereign immunity by authorizing damages actions for injuries caused by the tortious conduct of federal employees acting within the scope of their employment."  *Suter v. United States*, 441 F.3d 306, 310 (4th Cir. 2006).  In such cases, the United States is liable "in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. § 2674; *see Suter*, 441 F.3d at 310.

There are exceptions to the FTCA's waiver of sovereign immunity, "[t]he most important of [which] . . . is the discretionary function exception."  *McMellon v. United States*, 387 F.3d 329, 335 (4th Cir. 2004) (en banc).  The discretionary function exception retains sovereign immunity for claims "based upon the exercise or performance [of] . . . a discretionary function or duty . . . whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).  Cash bears the burden of demonstrating the waiver of sovereign immunity under the FTCA including the inapplicability of the discretionary function exception.  *See Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005).[14]

---

[14] Citing *Terbush v. United States*, 516 F.3d 1125 (9th Cir. 2008), Cash argues that the government bears the burden of proving sovereign immunity and the discretionary function exception.  ECF No. 25 at 1.  The Fourth Circuit has expressly

The FTCA shields individual government employees from liability.  Under 28 U.S.C. § 2679(d)(1), the Attorney General may certify that a defendant was acting within the scope of his federal office or employment causing the United States to be substituted as the defendant.[15]  Under 28 C.F.R. § 15.4(a) the U.S. Attorney for the district where the suit is brought is authorized to make the certification.  The FTCA does not, however, authorize suit against the United States or permit substitution for individuals when a violation of the U.S. Constitution is alleged.  *See* 28 U.S.C. § 2679(b)(2)(A); *Reinbold v. Evers*, 187 F.3d 348, 355 n.7 (4th Cir. 1999).

Further, the FTCA is an exclusive remedy: "[t]he judgment in an action under [the FTCA] shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim."  28 U.S.C. § 2676.  This judgment bar "encompass[es] all of the claims that could have been brought with regard to the conduct at issue against the responsible 'employee of the government.'"  *Unus v. Kane*, 565 F.3d 103, 122 (4th Cir. 2009).

---

held to the contrary.  *LeRose v. United States*, 285 F. App'x 93, 96 (4th Cir. 2008).

[15] *See Osborn v. Haley* 549 U.S. 225, 230 (2007) ("Upon the Attorney General's Certification, the employee is dismissed from the action and the United States is substituted as defendant in place of the employee.").

2.    Proper Defendants

a.    U.S. Marshals Service

The federal defendants move for dismissal of the U.S. Marshals Service on all counts, as the agency may not be sued *eo nomine*. ECF No. 22 at 1-2.   Cash apparently concedes this and stipulates to substituting the United States.  ECF No. 25 at 8. The government responds that substitution would not be correct and is also unnecessary because the United States is a party to the same claims.  ECF No. 26 at 6.

The FTCA does not permit tort suits against individual agencies of the United States.  *See* 28 U.S.C. § 2679(a)-(b); *Ross v. Fed. Bureau of Alcohol, Tobacco, & Firearms*, 807 F. Supp. 2d 362, 369 (D. Md. 2011).  Agencies also may not be sued for constitutional torts.  *See FDIC v. Meyer*, 510 U.S. 471, 486 (1994).  As all the claims in the complaint are analyzed under the FTCA or as constitutional torts, *see infra*, all of the claims against the Marshals Service must be dismissed.  *See id.*; *Ross*, 807 F. Supp. 2d at 369.

b.    Ulrich and Kearns: Certification

Cash argues that the U.S. Attorney's certification that Ulrich and Kearns were acting within the scope of their federal employment is insufficient to require substitution of the United States for counts I and IV (battery and negligence) and that Kearns is still liable in his official capacity as an officer of

16

West Virginia.   ECF No. 25 at 24-25.   The United States asserts that Cash has failed to challenge certification, and Kearns could not have acted in any capacity other than federal.   ECF No. 26 at 25.

On June 28, 2012, the U.S. Attorney for the District of Maryland certified that Ulrich and Kearns were acting within the scope of their federal duties.   ECF No. 22-14; *see* 28 U.S.C. § 2679(d)(1); 28 C.F.R. § 15.4(a).   As Cash has not challenged the certification, it is conclusive.   *See Gutierrez de Martinez v. Drug Enforcement Admin.*, 111 F.3d 1148, 1155 (4th Cir. 1997). The United States will be substituted for Ulrich and Kearns on counts I and IV.

Cash also argues that Kearns is still liable in his official capacity as an officer of West Virginia.   ECF No. 25 at 24-25.   The United States contends that Kearns could not be acting in his West Virginia capacity because West Virginia law does not permit his operation in Maryland.   ECF No. 26 at 8 n.2 (*citing* W. Va. Code § 15-2-12 (granting jurisdiction within West Virginia)).

Even if Cash's contention is correct, he cannot maintain his claims against Kearns in his official West Virginia capacity.   "Suits against state officials in their official capacity" are "treated as suits against the State."   *Hafer v. Melo*, 502 U.S. 21, 25 (1991).   As West Virginia is immune under

17

the Eleventh Amendment, *see supra*, so is Kearns. Cash cannot
proceed against Kearns in his West Virginia official capacity.

> 3.   Cash's Claims

>> a.   Negligence and Battery (Counts I and IV)

The United States asserts that Cash has not stated causes
of action for negligence and battery because he has not alleged
malice on the part of Ulrich and Kearns.  ECF No. 22-1 at 20-21.
Alternatively, it seeks summary judgment because they acted
properly when they thought Cash had a weapon.  *Id*. at 24.  Cash
argues that he has shown malice or gross negligence, and if he
has not liability shifts to the United States.  ECF No. 11.

Under the FTCA, the United States is liable to Cash as
Ulrich and Kearns would be under Maryland law.  *See* 28 U.S.C. §
2874.  In Maryland, state personnel are immune from suit unless
the act is made with malice or gross negligence.[16]

Under Maryland law, malice is "ill-will" or "evil or
wrongful motive."  *Barbe v. Pope*, 935 A.2d 699, 714 (Md. 2007)
(internal quotation marks omitted).  Gross negligence is

> an intentional failure to perform a manifest duty in
> reckless disregard of the consequences as effecting the
> life or property of another, and also implies a thoughtless
> disregard of the consequences without the exertion of any
> effort to avoid them.  Stated conversely, a wrongdoer is
> guilty of gross negligence or acts wantonly and willfully

---

[16] Md. Code Ann. Cts. & Jud. Proc. § 5-522(a)(4)(ii); *see id*. §
5-522(a)(4)(ii); Md. Code Ann. State Gov't § 12-104 (exception
to waiver of state sovereign immunity for malice and gross
negligence).

only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist.

*Id.* at 717 (internal quotation marks omitted).

### i.    Motion to Dismiss

The government asserts that the United States is immune because Cash has not alleged malice in the complaint.  ECF No. 22-1 at 20.  Cash counters that he properly pled gross negligence under Maryland law.  ECF No. 25 at 10.

As Cash has properly alleged gross negligence in the complaint, at least as to Ulrich, his facts must be taken as true.  *See Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011).  Cash thoroughly complied with orders, indicated that he did not have a weapon, and pleaded for his life.  ECF No. 1 ¶¶ 11, 13.  In response and without warning, Ulrich fired his Taser, hitting Kearns who shot Cash five times.  *Id.* ¶¶ 16-18. As alleged, these actions display the indifference to Cash's rights necessary for gross negligence.  *See Barbe*, 935 A.2d at 717-19.  Counts I and IV survive dismissal.

### ii.   Summary Judgment

Relying on Ulrich's and Kearn's statements, the government alternatively moves for summary judgment because the facts contained within show a lack of malice.  ECF No. 22-1 at 22. Cash acknowledges the possibility of summary judgment, but has

presented no evidence, arguing that factual disputes remain
precluding summary judgment.  ECF No. 25 at 5.

Summary judgment is proper only if there is "no genuine
dispute as to any material fact."  Fed. R. Civ. P. 56(a).  Cash
may not rely on the bare allegations in his complaint[17] to show
such a dispute.  See Allstate Fin. Corp. v. Financorp, Inc., 934
F.2d 55, 58 (1991).

Kearns and Ulrich provided detailed statements about the
events in the attic.  See ECF Nos. 22-5, 22-10.  Although
Kearns's statement contains a more detailed description of
Cash's movements, there is no conflict between the two
accounts.[18]  For example, although Kearns describes Cash dashing
to the wall and sticking his hands in the insulation, Ulrich
merely states that Cash leapt in the direction.  Compare ECF No.
22-5 at 2, with ECF No. 22-10 at 2.  This is a lack of
description, not a contradiction.

Both men describe Cash as initially noncompliant with
Kearns's orders.  ECF Nos. 22-5 at 2, 22-10 at 2.  After
appearing to act as directed, Cash suddenly leapt, with Ulrich
seeing "a look of resolve and slight sneer on his face."  ECF

---

[17] The complaint is not verified.

[18] Cash asserts inconsistencies in the federal defendant's
description of the events in their memorandum preclude summary
judgment.  ECF No. 25 at 6-7.  However, the facts in the
declarations, not the memorandum, control.  See Fed. R. Civ. P.
56(c).

No. 22-5 at 2; *see* ECF No. 22-10 at 2.   Both men feared that
Cash was attempting to get a weapon and feared for their safety.
ECF Nos. 22-5 at 2, 22-10 at 2.

Because of this fear, Ulrich discharged his Taser at Cash,
hit Kearns, and fell out of the attic.   ECF No. 22-5 at 2.
Kearns heard a gunshot, saw a flash, felt excruciating pain, and
saw Ulrich fall.   ECF No. 22-10 at 2.   That is why he shot Cash.
*Id.*

Contrary to Cash's assertion, these facts do not show gross
negligence.   The officers were not "utterly indifferent" to
Cash's rights. *See Barbe*, 935 A.2d at 717.   Instead, they feared
for their lives.[19]   As the facts show no malice or gross
negligence, Ulrich and Kearns are not liable under Maryland law.
*See* Md. Code Ann. Cts. & Jud. Proc. § 5-522(b).

Cash's argument that the United States is still liable
through shifting liability is incorrect.   Although Maryland law
makes the State liable when there is no malice or gross
negligence, *see* Md. Code Ann. State Gov't § 12-104; Md. Code
Ann. Cts. & Jud. Proc. § 5-522(a)(4)(ii), the United States is
liable only when a private person would be.   *See* 28 U.S.C. §
2674.   Because Kearns and Ulrich are not liable under Maryland

---

[19] *See Anderson v. Russell*, 247 F.3d 125, 131 (4th Cir. 2001)
(stating that reasonable officers fear for their safety when an
individual reaches for what the officer believes to be a gun).

law, the United States is not liable.  *See id.*  Summary judgment
will be granted for the United States.

> b.   Fourth and Fifth Amendment (Counts II and
>
>      III)

The federal defendants argue that Cash's constitutional
claims must be dismissed because they are (1) pled incorrectly
and (2) subject to the FTCA's judgment bar.[20]  ECF No. 22-1.

> i.   Section 1983 Designation

The federal defendants assert that Cash does not state a
claim because his constitutional tort claims are pled under 42
U.S.C. § 1983, which applies only to state officers.  ECF No.
22-1 at 13.  Cash argues that his complaint states that certain
claims arise under *Bivens*,[21] providing a cause of action for
these claims.  ECF No. 25 at 8.

Section 1983 is inapplicable to actions against a federal
officer.[22]  Counts II and III of the complaint are expressly

---

[20] Because these claims must be dismissed, the Court does not
reach the government's summary judgment arguments.

[21] *Bivens v. Six Unknown Named Agents of the Federal Bureau of
Narcotics*, 403 U.S. 388 (1971), permits suits for constitutional
torts against federal officers.  *Id.* at 389.

[22] *See* 42 U.S.C. § 1983 (subjecting to liability those who under
color of state law violates a person's federal rights); *Stoyanov
v. Mabus*, Civ. No. WDQ-07-1764, 2009 WL 4884518, at *7 n. 61 (D.
Md. Dec. 9, 2009) ("§ 1983 does not reach actions of the
'Federal Government and its officers.'" (*quoting District of
Columbia v. Carter*, 409 U.S. 418, 424 (1973))).

premised under § 1983, as is proper for the state defendants.
*See* ECF No. 1 ¶¶ 34-54.  The complaint does, however, state that
"[c]ertain segments of this action also arise under *Bivens*."
*Id.* ¶ 1.  Even if the complaint did not mention *Bivens*, the
Court may recharacterize the claims as under *Bivens* even though
Cash is represented by counsel.[23]  Counts II and III are properly
considered under *Bivens*.[24]

ii.  Judgment Bar

The federal defendants next argue that these claims must be
dismissed pursuant to the FTCA's judgment bar because the FTCA
claims have been dismissed.  ECF No. 22-1 at 25.  Cash asserts
that the cases on which the government relies are distinguish-
able on their procedural posture.[25]  ECF No. 25 at 23-24.

Under 28 U.S.C. § 2676 "the judgment in an action under
[the FTCA] shall constitute a complete bar to any action by the
claimant, by reason of the same subject matter, against the
employee of the government whose act or omission gave rise to

---

[23] *See Pike v. United States*, No. 3:11-cv-1016, 2012 WL 1222124
at *9 (collecting cases); *see also Chiang v. Lappin*, Civ. No.
RDB-07-1017, 2008 WL 2945434, at *5 (considering claims under
*Bivens* when § 1983 was pled).

[24] To the extent that Counts II and III lie against the United
States, the claims must be dismissed for lack of subject matter
jurisdiction because the United States has not waived its
sovereign immunity for constitutional torts.  *See Reinbold v.
Evers*, 187 F.3d 348, 355 n.7 (4th Cir. 1999).

[25] Cash has not addressed *Unus v. Kane*, 565 F.3d 103 (4th Cir.
2009), the principal case on which the government relies.

the claim." The Fourth Circuit has interpreted the judgment bar to "encompass all of the claims that could have been brought with regard to the conduct at issue against the responsible 'employee of the government.'" *Unus v. Kane*, 565 F.3d 103, 122 (4th Cir. 2009). The federal defendants argue that because summary judgment will be granted on the battery and negligence FTCA claims, the *Bivens* claims should be as well. ECF No. 22-1 at 25. Cash does not argue that his *Bivens* claims are a separate action from those FTCA claims. *Cf.* ECF No. 25 at 23-24.

*Unus* is clear: if there is a judgment for the United States on the FTCA actions, the related *Bivens* actions must be dismissed. *See Unus*, 565 F.3d at 121-22. Cash alleges FTCA claims for Ulrich and Kearns's shooting of him as negligence and battery. *See* ECF No. 1 ¶¶ 33, 62. The same actions gave rise to his *Bivens* claims. *See id.* ¶¶ 37, 48. As stated above, summary judgment will be granted on the negligence and battery FTCA claims. The *Bivens* claims therefore must be dismissed. *See Unus*, 565 F.3d at 122.

This result accords with the purpose of the judgment bar. Plaintiffs may choose to sue under *Bivens* or the FTCA at a risk that "having a judgment on the FTCA claims operate to bar their

*Bivens* theories." *Id.* As summary judgment will be entered for the federal defendants, Cash's *Bivens* claims will be dismissed.[26]

        c.    Maryland Declaration of Rights (Count V)

The federal defendants assert that the United States and its officers are immune to claims under the Maryland Declaration of Rights. ECF No. 22-1 at 14-15. Cash states that "claims against the individual officers are absolutely permitted under the Maryland Declaration of Rights," without elaboration. ECF No. 25 at 9.

Because Ulrich and Kearns have been certified as acting in their federal capacities, the FTCA is the exclusive remedy for this claim. *See* 28 U.S.C. § 2679. As the United States has not waived its sovereign immunity to the Maryland Declaration of Rights, this claim must be dismissed.[27]

        d.    Negligent Hiring, Retention, Entrustment,

            and Supervision (Counts VI-VIII)

The United States argues that these negligence claims fail to state a claim because they fall within the discretionary

---

[26] Because Cash's *Bivens* claims will be dismissed, the Court need not reach the federal defendants' alternative summary judgment arguments. *See* ECF No. 22 ¶ 9.

[27] *See Chin v. Wilhelm*, 291 F. Supp. 2d 400, 405 (D. Md. 2003); *see also Schmidt v. United States*, Civ. No. S-09-660 LKK GGH PS, 2011 WL 1988531, at *4 (E.D. Cal. May 20, 2011) (collecting cases denying relief on state constitutional claims).

function exception of the FTCA.[28]   ECF No. 22-1 at 16.   Cash

argues that these employment decisions were not policy choices.

ECF No. 25 at 21.

The United States has not waived sovereign immunity for the

discretionary functions of its employees.   28 U.S.C. § 2680(a).

In applying the discretionary function exception, the court must

determine (1) "whether the challenged conduct 'involves an

element of judgment or choice" and (2) "whether that judgment is

the kind that the discretionary function exception was designed

to shield,' i.e., whether the challenged action is 'based on

considerations of public policy.'"   *Suter v. United States*, 441

F.3d 306, 310-11 (*quoting Berkovitz v. United States*, 486 U.S.

531, 536-37 (1988)).  Cash bears the burden of showing that his

claim does not fall within the discretionary function exception.

*See Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005).

There is no dispute that the challenged conduct "involves

an element of judgment or choice."   *Berkovitz*, 486 U.S. at 536.

Cash asserts that the hiring, retention, and entrustment

decisions were not policy choices, because the United States'

officers had a duty to use due care and failed to do so.   ECF

No. 25 at 21.   The Fourth Circuit has held to the contrary:

---

[28] Although the complaint does not expressly indicate that the
negligence claims against the federal defendants arise under the
FTCA, Cash does not dispute the FTCA's applicability.   *See* ECF
No. 25 at 9.

employment decisions are policy choices within the discretionary function exception.[29]  Cash has not argued how entrustment of a firearm is anything but discretionary.[30]  As he has not demonstrated that this case does not fit within the discretionary function exception, Cash has not shown that the United States has waived its sovereign immunity. *See LeRose*, 285 F. App'x at 96.  These claims will be dismissed for lack of subject matter jurisdiction.[31]

        4.    Cash's Request for Leave to Amend

Embedded in Cash's opposition to the federal defendants' motion to dismissal is Cash's request for leave to amend his complaint.  ECF No. 25 at 25.  Because Cash seeks leave to file an amended complaint more than 21 days after the federal

---

[29] *See LeRose*, 285 F. App'x at 97 ("[D]ecisions regarding the hiring, supervision and retention . . . are precisely the type of decisions that are protected under the discretionary function exception."); *Suter*, 441 F.3d at 312 n.6.

[30] *See Leavitt v. City of El Paso*, No. Civ.A.EP-99-CA-76-EP, 2000 WL 33348224, at *6 (W.D. Tex. July 10, 2000) ("Whether to issue an agent a firearm involves a choice or judgment, and the enforcement of laws at the border would implicate policy.").

[31] The government premises its motion to dismiss these claims under the FTCA as failing to state a claim.  ECF No. 22-1.  As the United States has not waived its sovereign immunity on these claims, this court lacks subject matter jurisdiction and these claims will be dismissed on this ground.  *See LeRose*, 285 F. App'x at 96; *Anderson v. United States*, 669 F.3d 161, 164 (4th Cir. 2011) ("Where the United States has not waived its sovereign immunity, a plaintiff's claim against the United States should be dismissed for lack of subject matter jurisdiction.").

defendants moved to dismiss under Rule 12(b)(1) and (b)(6), he may amend his pleading only if the opposing party consents or with "the court's leave." Fed. R. Civ. P. 15(a)(2); Rice v. PNC Bank, N.A., No. PJM-10-07, 2010 WL 1711496, at *2 (D. Md. Apr. 26, 2010).

Rule 15(a)(2) instructs that leave should be freely given when justice requires. Fed. R. Civ. P. 15(a)(2). Accordingly, leave should be denied only when amending the complaint would prejudice the opposing party, amount to futility, or reward bad faith on the part of the movant. *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008). Any amendment as to the federal defendants would be futile as Cash's claims have been dismissed on subject matter grounds or resolved on summary judgment. Cash will not be granted leave to amend.

III. Conclusion

For the reasons stated above, Washington County's and the West Virginia State Police's motions to dismiss will be granted. The federal defendants' motion to dismiss or summary judgment will be granted.

_12/10/12_
Date

William D. Quarles, Jr.
United States District Judge

28